```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :
                                                            :
                  - v -                                     :           17-CR-219 (VSB)
                                                            :
                                                            :           OPINION & ORDER
                                                            :
ANTHONY DODAJ,                                              :
                                                            :
                                              Defendant.    :
                                                            :
------------------------------------------------------------X
```

VERNON S. BRODERICK, United States District Judge:

      Before me is the motion of Anthony Dodaj ("Defendant" or "Dodaj") pursuant to 18 U.S.C. § 3582(c)(1)(A), to "reduce his sentence to time served with a condition of home confinement" because of his "serious health condition and the threat that COVID-29 poses to his wellbeing." (Dodaj Mot. 2.)[1]  Because the factors set forth in 18 U.S.C. § 3553(a) counsel against a reduced sentence, Dodaj's motion for compassionate release is DENIED.

    **I.**    **Factual Background**[2]

      "On December 12, 2016, Ivy Katz voluntarily entered an inpatient rehabilitation program for opioid dependence at a hospital located in New York, New York (the "Hospital")."  (PSR ¶ 10.)  Nearly two weeks later, Ms. Katz was found unresponsive in her hospital room, with a hypodermic needle in her arm, in cardiac arrest.  The needle contained heroin.  (*Id.*)  Although Hospital personnel were able to resuscitate Katz, she remained in a coma due to oxygen deprivation to her brain.  Her family asked the Hospital to withdraw life support on January 16,

---

[1] "Dodaj Mot." refers to the letter to me from Mr. Dodaj dated August 5, 2020.  (Doc. 129.)

[2] The facts contained in this section are taken from Defendant's Presentence Investigation Report ("PSR").

2017, and Katz died shortly after. (*Id.*)

The New York City Police Department initiated an investigation into Katz's death. The case agent who initiated the investigation obtained Katz's cellular phone and learned that she was a heroin user. (*Id.* ¶ 11.) Katz would obtain heroin from Duane Martinez ("Martinez"), who she contacted using her cellular phone. (*Id.*) Patients at the Hospital's inpatient rehabilitation treatment program had access to several payphones. Records revealed that between December 30, 2016, and December 31, 2016, several calls were placed to Martinez from a Hospital payphone. (*Id.* ¶ 12.) On December 30, 2016, after receiving five calls from a Hospital payphone, Martinez made a call to a cellphone registered to Dodaj. (*Id.* ¶ 13.) Martinez and Dodaj spoke five more times on December 31, 2016. (*Id.*)

On December 31, 2016, Katz completed a Visitor Request Form to permit two people to visit her on January 1, 2017. One was "Anthony Dordasch"—the last name appears to be a phonetic spelling of Dodaj—and the other was "Duane Martinez". (*Id.*) On January 1, 2017, Dodaj "signed a visitor log located at a security desk in the Hospital indicating that he was visiting Katz." (*Id.* ¶ 14.) Dodaj entered the inpatient rehabilitation unit at 2:20 p.m. and met with Katz until approximately 2:44 p.m. when they walked towards the exit from Katz's unit. (*Id.*) While walking together, Katz momentarily entered her room, leaving Dodaj in the hallway. (*Id.*) Katz then escorted Dodaj to the exit door for her unit and returned to her room. Approximately 30 minutes after Dodaj left, Katz was found comatose in her room with a needle containing heroin in her arm. (*Id.*)

## II.   **Procedural History**

Dodaj was indicted on April 6, 2017. (Doc. 6.) A superseding indictment was filed on January 31, 2018, and charged Dodaj and his co-defendant Martinez with participating in a

narcotics conspiracy from on or about September 2016 to March 2017 that resulted in the death of Ivy Katz, and the distribution and possession with intent to distribute heroin during that same time period.  (Doc. 74.)

On August 1, 2018, Dodaj pled guilty pursuant to a plea agreement to Count One of a superseding information charging him with participating in a narcotics conspiracy from November 2015 until April 2017.  (Doc. 101.)  Defendant's applicable guideline range was 240 months' imprisonment, (PSR ¶ 139), and the Probation Department recommended a sentence of 240 months' imprisonment.  (*Id.*)  Dodaj was sentenced on April 18, 2019.  After considering the factors contained in 18 U.S.C. § 3553(a), I granted Dodaj a variance and sentenced him to 65 months' imprisonment, and five years of supervised release.  (*See generally* Doc. 125.)  Dodaj is currently housed in FCI Allenwood Medium ("Allenwood"), and his release date is November 8, 2021.  *Find an Inmate*, Fed. Bureau of Prisons (last visited June 2, 2021), https://www.bop.gov/inmateloc/.

Dodaj filed this pro se motion on August 11, 2020.  (Doc. 129.)  On December 15, 2020, Dodaj's CJA counsel filed a supplemental motion for compassionate release.  (Doc. 139.)  The Government filed its opposition on January 8, 2021, (Doc. 140), and Dodaj filed his reply on January 22, 2021, (Doc. 141).

### III. Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  Section 3582(c)(1)(A)(i) of title 18 of the United States Code, the compassionate release statute, provides one such exception.  The compassionate release statute permits a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . .

extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[3]  18 U.S.C. § 3582(c)(1)(A).

Until recently, a court could not order compassionate release unless the BOP requested such relief on a prisoner's behalf.  *See* U.S.S.G. § 1B1.13; *see also Gotti*, 433 F. Supp. 3d at 614.  However, in December 2018, Congress passed the First Step Act, which did away with BOP's unilateral ability to deny a prisoner compassionate release but did not remove the BOP from the process entirely.  *See id.*  The statute clearly states that a court may only grant compassionate release "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes.  First, it protects administrative agency authority by guaranteeing agencies the "opportunity to correct [their] own mistakes," and second, it promotes efficiency, since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court."  *Woodford v. Ngo*, 548 U.S. 81,

---

[3] The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13, although I note that the Sentencing Guidelines have not yet been revised to take into account the First Step Act.  *United States v. Russo*, 454 F. Supp. 3d 270, 273 (S.D.N.Y. 2020).  However, the Second Circuit recently interpreted § 1B1.13 in light of the First Step Act, and concluded that when a "compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it."  *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020).  "Because Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling."  *Id.*  "However, courts remain free – even after *Brooker* – to look to § 1B1.13 for guidance in the exercise of their discretion."  *United States v. Burman*, No. 16 Cr. 190 (PGG), 2021 WL 681401, at *5 (S.D.N.Y. Feb. 21, 2021) (internal quotation marks omitted).

89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

"The provenance of an administrative exhaustion requirement determines its scope." *United States v. Monzon*, No. 99cr157 (DLC), 2020 WL 550220, at *1 (S.D.N.Y. Feb. 4, 2020). There are two types of exhaustion requirements: jurisdictional ones and non-jurisdictional ones. Jurisdictional exhaustion requirements "govern a court's adjudicatory authority" and are not subject to any exceptions. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal quotation marks omitted). Non-jurisdictional requirements, also referred to as "claim-processing rules," can be "forfeited if the party asserting the rule waits too long to raise the point." *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004). The Second Circuit has not yet squarely answered the question of whether the exhaustion requirement of § 3582(c) is jurisdictional.[4] *Monzon*, 2020 WL 550220, at *2.

### IV. Discussion

#### A. *Exhaustion*

On July 8, 2020, Dodaj petitioned the warden at Allenwood for compassionate release or, in the alternative, a sentence reduction. (Dodaj Supp. 8.)[5] Dodaj's request was denied on July 29, 2020. (*Id*.) Dodaj provided the a copy of warden's response confirming that his "request for

---

[4] Other courts of appeal are split on the question of whether section 3582(c) as a whole is jurisdictional or non-jurisdictional. *Compare United States v. Castenada-Ulloa*, 818 F. App'x 813, 815–16 (10th Cir. June 23, 2020) (applying jurisdictional rule but noting intra- and inter-circuit split); *United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012), *and United States v. Auman*, 8 F.3d 1268, 1271 (8th Cir. 1993), *with United States v. Franco*, 973 F.3d 465, 468 (5th Cir.), *cert. denied*, 141 S. Ct. 920 (2020) (considering section 3582(c) a claim-processing rule); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020); *United States v. May*, 855 F.3d 271, 274–75 (4th Cir. 2017); *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1245 (11th Cir. 2017); *United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015); *and United States v. Weatherspoon*, 696 F.3d 416, 421 (3d Cir. 2012). Although the Second Circuit has not weighed in on whether the exhaustion requirement of section 3582(c)(1)(A) is jurisdictional, it has, "in a related context . . . firmly disagreed with the characterization by certain other circuits that § 3582(c)(2) is jurisdictional." *United States v. Haney*, 454 F. Supp. 3d 316, 319 (S.D.N.Y. 2020) (citing *United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013)).

[5] "Dodaj Supp." refers to Dodaj's supplemental submission in support of his motion for compassionate release dated December 15, 2020. (Doc. 139.)

5

Compassionate Release/RIS has been reviewed" and that the warden denied his request because "[his] concern about being potentially exposed to, or possibly contracting, COVID-19 [did] not [] warrant early release." (Dodaj Mot. 6.)  As the Government concedes, (Govt. Opp. 2, fn. 1),[6] Dodaj has satisfied § 3582(c)'s exhaustion requirement.

### B. *Extraordinary and Compelling Circumstances*

Dodaj contends that "[a]s an HIV+ individual with hypertension and a former heavy cigarette smoker, [he] has multiple health conditions that may place him at heightened risk of death or severe complications if he contracts COVID-19." (Dodaj. Supp. 1.)  Dodaj also claims he has "chronic kidney disease," is at "high risk for diabetes," and suffers from "mental complications/depression." (Dodaj Mot. 4.)  Dodaj's submissions focus primarily on the first three health issues listed above, arguing that "as an individual with three health conditions that may place him at heightened risk for death or severe illness if he contracts COVID-19, the risk is even greater for [] Dodaj and every day that he remains incarcerated poses a threat to his life and health." (Dodaj Supp. 6.)

The Government argues that only Dodaj's history as a former smoker "qualifies as a condition putting him at greater risk of COVID-19 that qualifies as an extraordinary and compelling reason supporting his release." (Govt. Opp. 4.)  The Government further argues that it is "unclear, at best, that Dodaj would be less exposed to COVID-19 if released." (*Id.*)  The Government contends that New Jersey—the state Dodaj intends to reside in if released—has more COVID-19 cases per 100,000 residents than Pennsylvania. (*Id.*)  Lastly, the Government argues that Dodaj's release would be inconsistent with Section 3553(a). (*Id.* at 6.)

---

[6] "Govt. Opp." refers to the Government memorandum in opposition to Dodaj's motion for compassionate release dated January 8, 2021.  (Doc. 140.)

### 1. Dodaj's Medical History

Dodaj asserts that the "'[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19.'" (Dodaj Supp. 6.) Dodaj argues that even though neither his HIV+ or hypertension diagnoses alone constitute medical conditions that put him at an increased risk of serious illness from COVID-19 the combination of the two, as well as his status as a former smoker, put him at increased risk of severe illness.

The Center for Disease Control and Prevention ("CDC") cautions on its website that it is "learning more about COVID-19 every day" and that its "list of underlying medical conditions is not exhaustive." *Underlying Medical Conditions Associated with High Risk for Severe COVID-19: Information for Healthcare Providers*, Ctrs. for Disease Control and Prevention, (last visited June 2, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html. As a result, the CDC continually updates information on its website. *People With Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, (last visited June 2, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC currently advises that certain medical conditions place people at any age "at increased risk for severe illness from COVID-19", while people with certain other medical conditions "might be at an increased risk for severe illness from COVID-19". *Id.*

Two of Dodaj's medical conditions fall into the latter category. People in an "[i]mmunocompromised state (weakened immune system) for instance, from "[p]rolonged use of corticosteroids or other immune weakening medicines"" may be at an increased risk for severe illness. *Id.* This includes people with HIV "with a low CD4 cell count" and "[p]eople not on effective HIV treatment (antiretroviral therapy or ART)." What to Know about HIV and

7

COVID-19, Centers. for Disease Control and Prevention, (last visited June 6, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/hiv.html. However, the CDC also notes that at this time, it "believe[s] people with HIV who are on effective HIV treatment have the same risk for COVID-19 as people who do not have HIV." *Id*. The CDC also advises that people with hypertension may be "more likely to get severely ill from COVID-19." *People With Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, (last visited June 6, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Hypertension is defined as "a systolic blood pressure ≥ 130 mm Hg or a diastolic blood pressure ≥ 80 mm Hg or are taking medication for hypertension." *Facts About Hypertension*, Ctrs. for Disease Control and Prevention, (last visited June 6, 2021), https://www.cdc.gov/bloodpressure/facts.htm.

Being a current or former smoker is, as the Government concedes, (Govt. Opp. 4), a condition that increases the risk of severe illness from COVID-19. The CDC advises that "[b]eing a current or former cigarette smoker can make you more likely to get severely ill from COVID-19." *People With Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, (last visited June 6, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Dodaj smoked a pack of cigarettes a day for thirty years, placing him firmly in a category that puts him at increased risk of severe illness should he contract COVID-19. (Dodaj Mot. 10.) Further, while Dodaj's viral load has consistently been undetectable, (Dodaj Supp. 6), and his hypertension is managed with medication, (Govt. Opp. 5), the combination of these two conditions, as well as his status as a former smoker rise to the level of compelling and extraordinary circumstances counseling in favor of release. *See United States v. Correa*, No. 08-CR-1026 (VEC), 2020 WL 7490098, at *4

(S.D.N.Y. Dec. 21, 2020) (concluding that defendant established extraordinary and compelling circumstances where "each of [defendant's] chronic conditions either leaves him at increased risk of severe illness from COVID-19 or, at minimum, might put him at increased risk for severe illness from COVID-19").

The Government also contends that releasing Dodaj to New Jersey, where he would reside with his sister, would not mitigate the risk posed by COVID-19 because New Jersey has a significant number of COVID-19 cases, and more cases per 100,000 residents than Pennsylvania where Allenwood is located. (Govt. Opp. 5.) Although the Government's assertion concerning the number COVID-19 cases in New Jersey and Pennsylvania is accurate, the difference in the number of COVID-19 cases in these two states does not conclusively demonstrate that Dodaj is less likely to contract the virus should he remain at Allenwood. In all, New Jersey and Pennsylvania have had comparable numbers of infections. In total, Pennsylvania has had 1,202,863 cases, and New Jersey has had 1,016,490. *United States COVID-19 Cases and Deaths by State*, Ctrs. for Disease Control and Prevention, (last visited June 2, 2021), https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days. Indeed, the statistics from the BOP suggest the rate of infection among inmates incarcerated at Allenwood is also significant. As of June 6, 2021, 1068 inmates at Allenwood have been tested for COVID-19, and 524 of those inmates tested positive. *COVID-19 Coronavirus, COVID-19 Cases*, Fed. Bureau of Prisons, (last visited June. 6, 2021), https://www.bop.gov/coronavirus/. Therefore, I find the Government's argument regarding Defendant's relative risk of exposure to COVID-19 in Pennsylvania as opposed to New Jersey unavailing. However, I need not determine whether the risk to Dodaj is so significant so as amount to extraordinary and compelling reasons warranting the reduction of his sentence to time served.

### 2. Section 3553(a) Factors

Granting Dodaj's compassionate release motion would require reducing his sentence to time served which would result in a substantial reduction in his sentence. Dodaj faced a mandatory minimum sentence of 20 years under the initial indictment; as part of the plea negotiation process, the Government offered and agreed to allow Dodaj to plead guilty to a lesser offense. According to Dodaj's plea agreement, his Guideline range was 240 months' imprisonment. After considering the factors under 18 U.S.C. § 3553(a), I sentenced Dodaj to 65 months' imprisonment—a substantial variance from his Guideline Range. (*See generally* Doc. 125.) Dodaj is scheduled to be released on November 8, 2021; therefore, there are approximately 8 months remaining on his sentence.

The seriousness of Dodaj's conduct cannot be overstated. Dodaj was part of a narcotics conspiracy that lasted approximately a year and a half and resulted in the death of Ivy Katz. At the time of her death, Katz was in an inpatient rehabilitation program for opioid dependence at the Hospital attempting to overcome her addiction. Dodaj coordinated with his co-defendant, Martinez, to supply Katz with heroin at the Hospital. The record reflects Dodaj's central role in providing Katz with heroin at the hospital that ultimately led to her death. Dodaj's previous criminal history is also extensive. Dodaj has 31 prior convictions—albeit many as a result of his drug addiction—several of which resulted in imprisonment. (*Id*. at 30.)

Dodaj emphasizes that since his incarceration, he has completed a six-week drug rehabilitation course and maintained an exemplary disciplinary record. (Dodaj Supp. 8.) Although I commend Dodaj for using his time in prison productively, I must still consider his actions and history before his incarceration in determining whether Section 3553(a) counsel in favor of compassionate release. For the reasons stated in detail at Dodaj's sentencing, which are

incorporated by reference here, and those outlined above, I find that modifying Dodaj's term of imprisonment would disserve the sentencing factors contained in Title 18, United States Code, Section 3553(a). Dodaj's sentence reflected the seriousness of his conduct, the nature of the offense, and his personal history. I do not find that the circumstances have changed, including due the current health condition in light of COVID-19, so dramatically as to warrant a sentence of time served.

## V. Conclusion

For the reasons stated above, because I find that the Section 3553(a) factors militate against reducing Dodaj's sentence to time served, Defendant's motion for compassionate release is DENIED.

The parties are directed to inform me of whether or not Dodaj has received the COVID-19 vaccine or, in the alternative, when he is expected to receive it by June 21, 2021.

SO ORDERED.

Dated: June 11, 2021
      New York, New York

                                            Vernon S. Broderick
                                            United States District Judge